Kenneth I. Schacter
Michael C. Schacter
**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, NY 10022
Telephone: 212.705.7000
Facsimile: 212.752.5378
kenneth.schacter@bingham.com

*Attorneys for Defendant Argo Partners, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREGORY O'BRIEN, on behalf of himself and others similarly situated,<br><br>          Plaintiff,<br><br>-against-<br><br>ARGO PARTNERS, INC., a/k/a ARGO PARTNERS,<br><br>          Defendant. | 09 Civ. 1020 (LDW) (AKT)<br><br>**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

### STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1, defendant Argo Partners, Inc. ("Argo") hereby submits the following Statement of Undisputed Material Facts in support of its motion for Summary Judgment. The record materials upon which Argo relies are attached to the accompanying Declaration of Kenneth I. Schacter ("Schacter Declaration"), filed herewith.

1. Argo is a New York investment firm that specializes in purchasing the claims of creditors of distressed companies, including insurance companies. Argo Answer at ¶¶ 18-19. plaintiff Gregory O'Brien ("O'Brien") is a New York resident. Amended Complaint at ¶ 6.

2. On July 3, 1986, O'Brien settled a medical malpractice claim he had brought against Brookhaven Memorial Hospital of New York and medical personnel at the hospital ("Brookhaven") for $1 million. October 29, 2009 Deposition of Gregory O'Brien ("O'Brien

Deposition"), attached to the Schacter Declaration as Exhibit A, at 15-24. Amended Complaint at ¶ 42.

3. Attorney Norman Dachs ("Dachs"), and his law firm of Shayne, Dachs, Stanisci & Corner, served as O'Brien's counsel with regard to the settlement and his underlying lawsuit against Brookhaven. September 16, 2009 Deposition of Norman H. Dachs ("Dachs Deposition"), attached to the Schacter Declaration as Exhibit B, at 13-18. Amended Complaint at ¶ 28.

4. As part of the settlement terms, O'Brien agreed that he could enforce his claim only against the hospital's insurance carrier, Ambassador Insurance Company ("Ambassador"). O'Brien Deposition at 22. *See also* July 3, 1986 Stipulation of Settlement ("Settlement Stipulation") (Dachs Deposition Exhibit 3) at 4, attached to the Schacter Declaration as Exhibit C.

5. At the time of the settlement, O'Brien and his counsel knew that Ambassador was in liquidation proceedings in Vermont. O'Brien Deposition at 22-23; Dachs Deposition at 17. Settlement Stipulation at 4. *See also* March 10, 1987 Ambassador Liquidation Order (Dachs Deposition Exhibit 17) at 4, attached to the Schacter Declaration as Exhibit D.

6. Given Ambassador's pending liquidation, the Settlement Stipulation to which O'Brien agreed specifically provided that payment to O'Brien, if any, "shall be based upon payments made to similar claimants, depending upon the funds available during the course of the liquidation." Settlement Stipulation at 5. *"No representation is being made at this time as to the amount of payment or as to the date of payment."* *Id*. at 4 (emphasis added).

7. Accordingly, both O'Brien and his counsel knew that the terms of the settlement did not provide for or guarantee *any* payment, much less and recurring, periodic or scheduled payments from Ambassador.

Q. You understood at that time that there was a chance that you might get nothing from the Ambassador Insurance Company; correct?

A Correct.

> Q. And you understood at that time that there was no guarantee that there would be a set of scheduled payments made to you; correct?
>
> A. Correct.
>
> Q. You didn't know when Ambassador might make a payment to you; right?
>
> A. Right
>
> Q. You didn't know how much they might make in a payment to you; right?
>
> A. Right.

O'Brien Deposition at 29-30. *See also id.* at 47 (Q: And just to go back to what we talked about earlier, you never expected certain payments to be made in a certain amount or on a certain date, correct? ***A: Yes. That was totally an unknown.***) (emphasis added). *See also* Dachs Deposition at 17-18 (Q: But the point is that at that time, you and your firm did not know when and did not know what would be paid? ***A: You're correct about that.***) (emphasis added).

8. On October 30, 1987, O'Brien (through Dachs as his counsel) submitted a claim for $1 million in the liquidation proceedings. *See* O'Brien Claim Form (Dachs Deposition Exhibit 4), attached to the Schacter Declaration as Exhibit E.[1] Amended Complaint at ¶ 47.

9. O'Brien eventually collected $900,000 of his $1 million claim in five sporadic payments from Ambassador, with the last payment occurring at the end of 1999. Amended Complaint at 50-51.

10. Each time, the Ambassador Liquidator ("Liquidator") sent O'Brien a letter (through O'Brien's attorney, Dachs) stating that "there may or may not be a future distribution" depending on the assets of the estate. *See id.* After the last payment in 1999, Dachs would occasionally send correspondence to the Liquidator on O'Brien's behalf, inquiring as to whether additional payments may be made. *See* Dachs Deposition Exhibits 5-9, attached to the Schacter Declaration as Exhibits F-J. In each response, the Liquidator stated that that he did not "know the timing or amount" of distributions, if any. *See id.* Indeed, in 2002, the Liquidator informed Dachs that "[we are not currently authorized to issue a future distribution of Ambassador claims.

---

[1] Dachs testified that he has extensive experience dealing with and participating in insurance company liquidation proceedings. Dachs Deposition at 23-24.

Moreover, we are not aware that a distribution will be commanded in the future." Dachs Deposition Exhibit 8. *See* Dachs Deposition Exhibit 9. ("At this time, it is uncertain as to whether or not there will be a future distribution. No decision is anticipated in the near future."). *See also* Dachs Deposition at 27-28.

11. At the end of August 2006, however, the Liquidator responded to one of Dachs' inquiries by informing him that Ambassador had recently won a jury verdict in federal court in New jersey of more that $180 million against Ambassador's former auditors, PricewaterhouseCoopers (the "Verdict"). *See* Dachs Deposition Exhibit 11, attached to the Schacter Declaration as Exhibit K. The Liquidator attached press clippings regarding the award to his letter. *Id.* He also informed Dachs that the auditors had filed an appeal and therefore advised that "we cannot predict when future distributions would be processed." *See id. See also* Dachs Deposition at 33.

12. On or about September 15, 2006, Argo sent O'Brien (care of Dachs) a letter offering to purchase his claim against Ambassador for $50,000. Dachs Deposition Exhibit 10, attached to the Schacter Declaration as Exhibit L.

13. O'Brien rejected Argo's initial offer, saying that it was "not enough money on the dollar" nor a "fair amount." O'Brien Deposition at 55. He instructed his attorney, Dachs, "to renegotiate" for a higher amount. *Id.* at 56.

14. During the course of negotiations with Argo, O'Brien and Dachs were well aware of, and discussed, the Verdict. O'Brien Deposition at 58; Dachs Deposition at 33-35. In fact, after receiving Argo's initial offer, Dachs wrote to the Liquidator requesting more information on the Verdict and regarding the auditors' appeal to the Third Circuit. Dachs Deposition Exhibits 12-13, attached to the Schacter Declaration as Exhibits M-N. Dachs also requested and received *from Argo* a copy of the district court decision upholding the Verdict and denying the auditors' post-trial motion for a new trial. Dachs Deposition Exhibit 14, attached to the Schacter Declaration as Exhibit O. *See also* October 13, 2009 deposition of Joseph Puccio ("Puccio Deposition") at 86-7, attached to the Schacter Declaration as Exhibit P. Dachs and O'Brien

specifically discussed the Verdict, the pending appeal, and the impact both could have on Ambassador's ability to make future payments to O'Brien. O'Brien Deposition at 58; Dachs Deposition at 47-49. *See also* Dachs Deposition at 42 ("I advised him generally that cases do get reversed and appellants are successful in many cases and that that's a chance he's going to have to take.").[2]

15. In December 2006, after further negotiations with Argo (Puccio Deposition at 88-90), O'Brien, with the advice and counsel of Dachs, agreed to assign his claim to Argo for $62,500. O'Brien Deposition at 63. Dachs Deposition at 48.

16. In sworn interrogatory responses, O'Brien explained that, at the time of his decision:

> I believed that $62,500 would be the highest amount recoverable at that time because I did not believe that ARGO would pay more than that amount considering the speculative nature of the possibility that the Liquidator would even pay the remaining 10%, *i.e.* $100,000 in full or as to when such payment would finally be made.

O'Brien Interrogatory Responses dated July 9, 2009 ("Interrogatory Responses") at 3, attached to the Schacter Declaration as Exhibit Q.

17. Argo and O'Brien executed two documents to memorialize the transaction – a purchase agreement and an assignment (respectively, the "Purchase Agreement" and the "Assignment" and collectively, the "Assignment Agreements"). Dachs Deposition Exhibit 16, attached to the Schacter Declaration as Exhibit R.

18. Dachs reviewed and approved the Assignment Agreements and then sent them to O'Brien for execution. O'Brien Deposition at 65-66; 74-76. O'Brien read both documents, discussed them with Dachs, and then signed and initialed them at his home in New York. *Id.*

19. Both the Purchase Agreement and Assignment explicitly state that O'Brien (the "Assignor") assigned to Argo (the "Assignee") "*all of Assignor's right title and interest* in and to the allowed and recommended claim or claims of Assignor (the "Claim")" against Ambassador. *See id* (emphasis added).

---

[2] During the negotiations, O'Brien never had any direct contact with Argo. O'Brien Deposition at 110.

20. The Purchase Agreement further provided that "Assignor [O'Brien] represents and warrants that the amount of the Claim is allowed *at not less than $1,000,000.00* and that the Claim in that amount is valid" and, critically, that *"Assignor agrees to remit to Assignee any future distribution it receives from the Estate on this Claim." See id.* (emphasis added).

21. At his deposition, O'Brien conceded that the interest payment at issue in this case is, in fact, a "future distribution" on the claim.

Q. Turning back to the Purchase Agreement, and that line regarding, where "Assignor agrees to remit to Assignee any future distribution it receives from the Estate on this Claim."

A Okay.

Q. *The interest payment that is at issue in this case is a future distribution on your claim; correct?*

A. The interest?

Q. Yes.

A. *Yes.*

O'Brien Deposition at 81-82 (emphasis added).

22. The Assignment additionally provided that:

Assignor represents that it has adequate information concerning the business and financial condition of the Estate and the status of the Proceedings to make an informed decision regarding the sale of the Claim and that it has independently and without reliance on Assignee, and based on such information as Assignor has deemed appropriate (including information available from the files of the Court in the Proceedings), made its own analysis and decision to enter into this Assignment of Claim.

23. When Argo purchased O'Brien's claim, it took the risk that little or no further distributions would be paid on the claim, whether principal or interest. October 14, 2009 Deposition of Michael Singer at 17, attached to the Schacter Declaration as Exhibit S at 55, 61, 64-65, 81. *See also id.* at 42 (testimony that, in return for payment, Argo received and intended to receive an assignment of "the claim and all rights and interests and everything else to the claim."). O'Brien, as noted, did not want to take that risk. *See* ¶ 16 above. *See also* O'Brien

-6-

Interrogatory Responses at 4 ("In as much as I was uncertain as to whether the Liquidator had accumulated sufficient funds even to pay the principal sum due in full, I had no reason to believe that he would have sufficient funds to pay interest as well.").

24. Argo provided a copy of the executed Assignment Agreements to the Liquidator, who, after receiving them, sent Argo a letter acknowledging that the O'Brien claim "has been transferred to Argo Partners." *See* Dachs Deposition Exhibit 21, attached to the Schacter Declaration as Exhibit T. As in prior correspondence with Dachs, however, the Liquidator also advised Argo that "[w]e are not currently authorized to issue a future distribution of Ambassador claims. Moreover, we are not aware that a distribution will be commanded in the future." *Id.*

25. The Third Circuit affirmed the Verdict on September 9, 2008. *See Thabault v. Chait et al*, 541 F.3d 512 (3d Cir. 2008).

26. On October 31, 2008, Ambassador announced that it had sufficient funds to pay certain claims, with interest, including the O'Brien claim assigned to and owned by Argo.

27. More than two years after assigning his claim to Argo, and having learned that the risk associated with the appeal of the auditor litigation had been resolved and Ambassador claimants were now entitled to more money, O'Brien instructed Dachs to "get on the case" and "get that money." O'Brien Deposition at 91; 93.

28. O'Brien, with Dachs as his counsel, eventually filed this purported class action against Argo in New York state court. *See* Docket No. 1 (February 4, 2009 Complaint). The gist of the suit is that, while O'Brien does not dispute that he assigned and sold his claim to Argo, and that Argo is entitled to the undistributed *principal* amount of his allowed liquidation claim (*i.e.*, $100,000), he asserts that when he sold "all right, title and interest" in his claim, he somehow retained the right to receive distributions of *interest. See id.* at ¶¶ 31-33. The interest on the claim is expected to be several hundred thousand dollars. Amended Complaint at 75.

29. Following removal of the case to this Court, O'Brien replaced his original litigation counsel, Mr. Dachs (who advised him with respect to his assignment to Argo), and his

new counsel filed an amended complaint in September 2009. *See* Docket No. 19. Argo filed its answer on October 29, 2009. Docket No. 22.

30. The case was assigned to Magistrate Judge Tomlinson for purposes of discovery; the discovery schedule that Magistrate Judge Tomlinson approved provided that the parties would first conduct discovery (which is now complete) and submit dispositive motions regarding O'Brien's individual claims before proceeding with class issues. Docket No. 10.

31. At the close of fact discovery, O'Brien made a motion to compel Argo to produce additional documents "relating to [Argo's] 'state of mind' with regard to what it believed it was purchasing from the Ambassador...." *See* Order dated December 16, 2009, Docket No. 26. These documents consisted of assignment agreements between Argo and other Ambassador claimants. *Id.* Magistrate Judge Tomlinson issued an order denying O'Brien's motion. *Id.* The Court also denied O'Brien's request for documents related to a different proceeding between Argo and another claimant and other documents from the Vermont liquidation proceedings as "clearly outside the scope" of the proper discovery. *Id.*

32. Magistrate Tomlinson did, however, require Argo to search its records for any documents which discuss or mention the topic of the payment of interest (specifically or generally) with respect to claims that were assigned to Argo in the Ambassador liquidation proceedings. *Id.*

33. Argo located no such responsive documents and, consistent with Magistrate Judge Tomlinson's instructions, provided O'Brien with a declaration to that effect. *See* Declaration of Kenneth A. De Koven attached to the Schacter Declaration as Exhibit U.

Dated:   New York, New York
         March 18, 2010

                                            **BINGHAM McCUTCHEN LLP**

By: _____
Kenneth I. Schacter
399 Park Avenue
New York, NY 10022
Telephone: 212.705.7000
Facsimile: 212.752.5378
kenneth.schacter@bingham.com

Michael C. Schacter
One State Street
Hartford, CT 06103
Telephone: 860.240.2700
Facsimile: 860.240.2800
michael.dagostino@bingham.com

*Attorneys for Defendant Argo Partners, Inc.*

A/73308074.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was sent on March 18, 2010, by Federal Express, to plaintiff's counsel of record:

Steven A. Cash, Esq. (#SC7726)
Harris, Cutler, Cash & Houghteling, LLP
International Square
1825 "Eye" Street, NW
Suite 400
Washington, DC 20006
Telephone: 301-908-3927

*Counsel for Plaintiff,*
*Gregory O'Brien*

Kenneth I. Schacter