UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
GREGORY O'BRIEN, on behalf of himself
and others similarly situated,

                                               MEMORANDUM AND ORDER

                      Plaintiffs,                        CV 09-1020

        -against-                             (Wexler, J.)

ARGO PARTNERS, INC. a/k/a ARGO
PARTNERS,

                       Defendant.
--------------------------------------------------------X

APPEARANCES:

        HARRIS, CUTLER, CASH & HOUGHTELING, LLP
        BY: STEVEN A. CASH, ESQ.
        International Square
        1825 "Eye" Street, NW Suite 400
        Washington, DC 20006
        Attorneys for Plaintiff

        BINGHAM McCUTCHEN LLP
        BY: KENNETH I. SCHACTER, ESQ.,
        MICHAEL C. D'AGOSTINO, ESQ.
        399 Park Avenue
        New York, New York 10022
        Attorneys for Defendant

WEXLER, District Judge:

In 2006, Plaintiff Gregory O'Brien ("Plaintiff" or "O'Brien") assigned to Defendant Argo

Partners, Inc. ("Defendant" or "Argo"), all of his "rights title and interest" to a claim against an

insurance company in liquidation proceedings. Argo paid Plaintiff $62,500 for the assignment of

that claim. In this action, O'Brien seeks a judgment that his transaction with Argo did not include

an assignment of interest payments that might become associated with his claim.

1

Presently before the court is Defendant's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. Defendant argues, and the court agrees, that the parties entered into a binding contract that clearly and unambiguously assigns to Argo all rights to Plaintiff's claim – including the right to receive any possible future interest payments. Defendant owes nothing further to Plaintiff, and the motion for summary judgment is granted in its entirety.[1]

BACKGROUND

I.    The Plaintiff, His Claim and Payments Received

In March of 1980, Plaintiff was treated at Brookhaven Memorial Hospital ("Brookhaven") for injuries sustained in a car accident. After being rendered a quadriplegic, O'Brien took legal action against Brookhaven. The action against Brookhaven was settled in July of 1986, when O'Brien and Brookhaven entered into a settlement in the amount of $1 million. It was agreed that the settlement would be paid by Brookhaven's outside insurer, Ambassador Insurance Company ("Ambassador").

At the time of the settlement, O'Brien was aware that Ambassador was in liquidation proceedings. O'Brien made a claim for the settlement amount of $1 million in the context of those proceedings. At the time, O'Brien knew that he would receive payment, if any, in accord with payments made to similarly situated claimants. Such payments would depend on the amount of funds available during the course of the Ambassador liquidation proceedings. In the years that followed, Ambassador made numerous payments to Plaintiff. By 2006, those payments amounted to $900,000.

---

[1]    Plaintiff styles this matter as a class action commenced on behalf of himself and others alleged to be similarly situated. In view of the court's disposition of the motion, it is unnecessary to address the propriety of class action certification.

II.    The 2006 Verdict in Favor of Ambassador and the Assignment of Plaintiff's Claim

Norman Dachs, Plaintiff's personal injury attorney ("Dachs") made periodic inquiry with respect to the liquidation proceedings. Evidence before the court indicates that letters were sent by Dachs to the receiver for the Ambassador liquidation proceedings in 1994, 1995, 2002, 2003 and 2006. With the exception of the 2006 letter, Plaintiff was advised that there was no certainty as to future distributions, and that no decision regarding such distribution was anticipated in the near future. As to the 2006 inquiry, Dachs was advised, in a letter dated August 31, 2006, that Ambassador had obtained a favorable trial court ruling in a case it commenced against its auditors. That ruling entitled Ambassador to payments exceeding $180 million. Ambassador made no distribution of funds at the time of the trial court ruling, because, as advised in the August 31, 2006 correspondence to Dachs, an appeal was pending. Ambassador's letter states specifically, "[t]he accounting firm has filed an appeal. We do not know when the appeals process will conclude; therefore we cannot predict when a future distribution would be processed."

In a letter dated September 14, 2006, while the appeal of the $180 million judgment was pending, O'Brien was contacted, through Dachs, by Defendant Argo. Argo is a New York investment firm that derives a majority of its business from purchasing the claims of creditors of distressed companies. Argo offered to purchase O'Brien's claim against Ambassador for $50,000. This offer was communicated to O'Brien through Dachs, and was rejected as insufficient. On September 28, 2006, Dachs wrote to the receiver for the Ambassador liquidation proceedings, asking to be informed of the status of the appeal of its favorable verdict. In a responding letter dated October 2, 2006, Dachs was advised that the appeal remained pending. Negotiations as to the value of O'Brien's claim continued, though counsel. In December of 2006,

3

after not receiving any further payments from Ambassador for several years, O'Brien agreed to assign his claim against Ambassador to Argo for the sum of $62,500.

Plaintiff and Argo executed two documents to memorialize the transaction – a purchase agreement, and an assignment of the claim (respectively, the "Purchase Agreement" and the "Assignment" and collectively, the "Assignment Agreements"). The Purchase Agreement states that O'Brien, as the Assignor, assigned to Argo, as Assignee:

> "all of Assignor's right title and interest in and to the allowed and recommended claim or claims (the "Claim") of Assignor against Ambassador Insurance Company (the "Estate") in liquidation proceedings . . . ."

The Purchase Agreement further provides that

> "Assignor agrees to remit to Assignee any future distribution it receives from the Estate on this Claim."

The Assignment, executed on the same day as the Purchase Agreement, states the same language of assignment quoted above as set forth in the Purchase Agreement. The Assignment states additionally, that the claim is assigned free and clear of any prior assignments or claims that might impair the value of the claim to Argo. It further states that O'Brien, the Assignor:

> represents that it has adequate information concerning the business and financial condition of the Estate and the status of the Proceedings[2] to make an informed decision regarding the sale of the Claim and that it has independently and without reliance on Assignee, and based on such information as Assignor has deemed appropriate (including information available from the files of the Court in the Proceedings), made its own analysis and decision to enter into this Assignment of Claim.

III.    The Affirmance of the Ambassador Verdict

In September of 2008, approximately two years after O'Brien executed the Assignment Agreements, the Third Circuit Court of Appeals affirmed the trial court's award to Ambassador.

_____

[2]        The "Proceedings" refer to the Ambassador Liquidation Proceedings.

As a result of the ruling, Ambassador announced, on October 31, 2008, that it had obtained enough money to pay the balance on certain claims. The infusion of funds allowed Ambassador to pay not only the principle amount owed on its claims, but also the interest on such claims. Among the claims Ambassador became able to pay in full, with interest, was what remained of O'Brien's initial $1 million claim that had been assigned to Argo – an amount in excess of the remaining principle of $100,000.

IV.     O'Brien's Commencement of This Action

On February 4, 2009, O'Brien filed this action against Argo in New York state court. It was thereafter removed here on the basis of diversity of citizenship. O'Brien, who received $900,000 of the principle amount on his $1 million claim, argues that the Assignment Agreements entitle Argo only to $100,000 – the outstanding unpaid 10% of the initial $1 million claim, and not to any other payments, including any interest that has accrued upon his entire claim.

O'Brien's amended complaint asserts five causes of action. The first claim asserts that the Assignment Agreements are clear and unambiguous, and can be read only to have assigned to Argo the right to receive payment of the principle remaining on the claim against Ambassador. In connection with this cause of action, O'Brien seeks a declaration that he did not assign the right to future interest distributions. The second cause of action takes a different approach, alleging that there was no meeting of the minds regarding the issue of any future distribution of interest by Ambassador, and therefore seeks a declaration that no binding contract was formed. Plaintiff's third claim seeks reformation of the Assignment Agreements. The fourth claim alleges fraud based on representations made by Argo. Finally, the fifth claim asserts that the Assignment Agreements purport to transfer a "Structured Settlement" under New York State General

5

Obligation Law Title 17, and because there was no judicial approval of said transfer, the agreements are null and void pursuant to New York State General Obligation Law § 5-1706.

Discovery is complete and Argo now moves for summary judgment as to each of O'Brien's claims. After setting forth applicable legal principles the court will turn to the merits of the motion.

## DISCUSSION

I.    Standards on Motion for Summary Judgment

A grant of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden of showing the absence of a disputed issue of material fact, the burden then shifts to the non-moving party to present specific evidence that demonstrates the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d. Cir. 1995). That party, however, must present more the a "scintilla" of evidence, and may not rely upon mere speculation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990). Instead, the motion can be defeated only were there is "enough evidence submitted to enable a reasonable juror to return a verdict" in favor of the party opposing the motion. Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001).

II.    Disposition of the Motion

Plaintiff's first three claims sound in contract principles of law, and will therefore be discussed together.  Specifically, Plaintiff claims that: (1) the Assignment Agreements are clear and unambiguous and can be read only to have assigned to Argo the right to receive payment of the principal remaining on the claim against Ambassador, and not the interest: (2) there was no meeting of the minds as to any agreement to the assignment of interest on O'Brien's claim, and (3) Plaintiff is entitled to reformation of his agreement with Argo.  No claim has merit.

A.    Claims Sounding in Contract: Legal Principles

All agree that the Assignment Agreements are contracts governed by the law of the State of New York.  Pursuant to that law, contract formation requires an objective meeting of the minds regarding the material terms thereof.  Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc., 487 F.3d 89, 95 (2d Cir. 2007); Express Indus. & Terminal Corp. v. New York State Dep't of Transp., 693 N.Y.S.2d 857, 860 (1999).   As to the question of intent, the court looks to the "objective manifestations" thereof and not to any "unexpressed subjective views."  Hanley v. Sevilla Restaurant & Bar, 1997 WL 30954 *3 (S.D.N.Y. 1997).  Acceptance of the benefits of a contract is a strong indicator of assent to an agreement.  See McLean v. Balkoski, 509 N.Y.S.2d 34, 36 (1ˢᵗ Dep't 1986).

Once it is determined that a contract exists, there may arise the issue of contract interpretation.  Such issues ordinarily present questions of law for the court to decide, and are properly decided in the context of a motion for summary judgment.  Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002); see AWL Industries, Inc. v. Site Remediation Services Corp., 92 F. Supp.2d 132, 135 (E.D.N.Y. 2000).  Where the terms of a contract are clear and unambiguous, "and reasonable people could not disagree as to the meaning of the text, the

7

contract's interpretation is a question of law to be answered by the court." Sage Realty Corp. v. Jugobanka, D.D., 1998 WL 702272 *4 (S.D.N.Y.1998); see RJE Corp. v. Northville Industries Corp., 329 F.3d 310, 314 (2d Cir. 2003).  In such cases, the contract is to be interpreted with reference only to the four corners of the document and evidence as what was "really intended but unstated or misstated is generally inadmissible." Emcee Personnel v. Morgan Lewis & Bockius, LLP, 702 N.Y.S.2d 633, 634 (2d Dep't 2000), quoting, W.W.W. Assocs., Inc. v. Giancontieri, 565 N.Y.S.2d 440, 443 (1990); see RJE Corp, 329 F.3d at 314.  Clear and complete writings should generally be enforced according to the terms contained therein. Burns v. Bankruptcy Estate of Swyers, 2003 WL 23350110 *2 (W.D.N.Y. December 9, 2003); see Site Remediation, 92 F. Supp.2d at 135-36.

On the other hand, where the terms of a contract are ambiguous, and susceptible to more than one meaning, the court may consider evidence outside of the contract as an aid to interpret the meaning of the language that the parties chose. Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993); Emcee Personnel, 702 N.Y.S.2d at 634.  The language at issue will be deemed ambiguous if it is "'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement . . .'" Sayers, 7 F.3d at 1095 (citations omitted).  Where, on the other hand, contract language has a "definite and precise meaning, unattended by the danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion" the contract is without ambiguity. Id., quoting, Breed v. Insurance Co. of N. Am., 46 N.Y.2d 351, 355 (1978).

Extrinsic evidence may not create ambiguity in a written contract that is "clear and unambiguous upon its face." W.W.W. Assocs., Inc., 565 N.Y.S.2d at 444.  Resolution of the

8

issue of whether an ambiguity exists, sufficient to allow consideration of extrinsic evidence, presents a question of law for the court. Sayers, 7 F.3d at 1095; W.W.W. Assocs., 565 N.Y.S.2d at 443; see Chimart Assocs. v. Paul, 498 N.Y.S.2d 344, 346 (1986). For a contract to be deemed ambiguous, there must be a "reasonable basis for a difference of opinion" as to its meaning. Red Rock Commodities, Ltd. v. Standard Chartered Bank, 140 F.3d 420, 424 (2d Cir. 1998). As to the particular law governing assignment contracts in particular, it is clear that an assignee stands in the shoes of the assignor. He "takes all rights of the assignor, no greater and no less," receiving the same legal rights and subject to the same "equities and burdens." Beal Bank, SSB v. Nassau County, 973 F. Supp. 130, 134 (E.D.N.Y. 1997) (citations omitted); see In re New Haven Projects Ltd. Liability Co., 225 F.3d 283, 290 n.4 (2d Cir. 2000).

B.      Disposition of the Contract Claims

As to the issue of contract formation, the court holds that a binding contract was formed between O'Brien and Argo. There is no doubt that there was an objective meeting of the minds when the Assignment Agreements were signed. That meeting was preceded by correspondence among the parties' counsel, and negotiation as to the terms of their agreement. Those negotiations culminated in the signing of a binding contract in the form of the Assignment Agreements. The court further holds, as a matter of law, that the Assignment Agreements are clear and unambiguous in their assignment of Plaintiff's remaining claim against Ambassador – including any payment of interest. There is neither need to resort to parol evidence of intent, nor to conclude that there was not a meeting of the minds as to what was included in the agreements.

The language of the Assignment Agreements shows that O'Brien's manifested the intent to assign, in plain terms, all of his "right, title, and interest in and to the allowed or recommended claim" against Ambassador. This recitation is a full and complete assignment, with no

9

reservation of any part of such "right, title and interest." Indeed, the court can scarcely imagine broader language of assignment. Whether O'Brien held a subjective intent otherwise, and there is no evidence that he did, is irrelevant to the issue of binding contract formation. The sentence in the Purchase Agreement which states that O'Brien "agrees to remit to Assignee any future distribution it receives from the Estate on this Claim" provides evidence that O'Brien manifested his intent to assign all rights that might arise in the future in connection with his claim, including the right to receive additional payment of principle and/or interest.

O'Brien cannot now assert that no contract was formed because he did not intend to assign the right to the interest on the claim. O'Brien's execution of the clear Assignment Agreements constitutes an unmistakable manifestation of his intent to assign to Argo all of his present and future rights to his claim. Before the assignment, O'Brien had the legal right to collect whatever interest that had accrued upon his claim against Ambassador, if Ambassador ever obtained sufficient funds to pay that amount. When O'Brien assigned the rights to his claim to Argo and accepted $62,500 in consideration, Argo received the same legal rights that O'Brien had, no more and no less. These legal rights include the right to collect the interest that had accrued upon the claim against Ambassador.

O'Brien claims that the Assignment Agreements are ambiguous in their reference to the term "allowed and recommended claim." This phrase, however, clearly refers only to the fact that the claim assigned may or may not be paid by Ambassador. It has nothing whatever to do with the assignment of interest. When O'Brien sold his claim to Argo he assigned all of his rights to payment, whether or not those rights ever amounted to any payment at all – including the right to interest. Plaintiff, who was represented by counsel, was aware of Ambassador's litigation with its auditors, and the possibility that a large sum of money for distribution might – or might not –

10

become available to holders of claims. Plaintiff decided not to take that risk, and sold all rights associated with his claim in exchange for sure payment of a definite sum of money. Argo may have come away from the parties' transaction with no distribution from Ambassador, as none was guaranteed. The fact that Argo, in hindsight, made a better deal than Plaintiff, is no reason to find either a lack of a meeting of the minds or ambiguity in the documents.

C.      Reformation is Not Warranted

O'Brien seeks reformation of the Assignment Agreements to reflect a transfer of only the principle balance of his claim. The "thrust of a reformation claim is that a writing does not set forth the actual agreement of the parties." Chimart Associates, 498 N.Y.S.2d at 347. Under New York Law, reformation of contracts is warranted only in cases of mutual mistake, where the written agreement contradicts the intent of both parties, or in cases of fraud, where "the parties have reached agreement and, unknown to one party but known to the other (who has misled the first), the subsequent writing does not properly express that agreement." Id.; see also AMEX Assurance Co. v. Caripides, 316 F.3d 154, 161 (2d Cir. 2003). A party seeking reformation must "show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." Chimart Associates, 489 N.Y.S.2d at 347 (citation omitted). "Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties." George Backer Management Corp. v. Acme Quilting Co., Inc. 413 N.Y.S.2d 135, 139 (1978); see, e.g., Lemus v. Manhattan Car Wash, Inc., 2010 WL 1372705 *8 (S.D.N.Y. 2010).

There is no indication whatever that any of the conditions requiring reformation exist here. As discussed above, Argo intended to buy all of O'Brien's rights to the claim against

11

Ambassador, including the right to receive the interest that has accrued on the claim. It was in no way mistaken as to the terms of the contract. Additionally, the evidence is clear that O'Brien was acting pursuant to the advice of counsel, who had knowledge of the status of the Ambassador liquidation proceedings. Argo made no misrepresentation regarding those proceedings, or any other matter relating to the Assignment Agreements. There is neither evidence of mistake nor any misleading of the Plaintiff by Defendant. Under these circumstances, the claim for reformation must be dismissed.

D.    The Fraud Claim is Dismissed

As to his claim of fraud, O'Brien alleges that after the assignment transaction was complete, Argo fraudulently represented to Ambassador that the interest on O'Brien's claim is to be paid to them. Under New York law, "fraud...may...exist where a false representation is made to a third party, resulting in injury to the plaintiff." Ruffing v. Union Carbide Corp., 764 N.Y.S.2d 462, 465 (2d Dep't 2003). This rule, however, has no application here because Argo made no fraudulent representations to Ambassador. Argo simply informed Ambassador of its agreement with O'Brien. That notification informed Ambassador of the truthful fact that O'Brien transferred to Argo all rights to his claim against Ambassador. No claim of fraud can possibly rest on such a statement. Argo did not make a false representation to Ambassador when it informed Ambassador that the interest on O'Brien's claim should be paid to them.

O'Brien also claims that Argo misled him during negotiations as to the terms of the Assignment Agreements, representing that he was transferring only the remaining 10% of his claim against Ambassador. This argument has no merit because O'Brien was, or should have been aware at the time the agreement was reached with Argo, that Ambassador might, at some point in the future, be able to make payments on both the remaining 10% of his claim, and the

12

interest accrued thereon.  O'Brien did not want to take a risk as to future payments.  He voluntarily sold all of the rights to his claim to Argo in exchange for $62,500.  Furthermore, O'Brien was represented by an attorney throughout negotiations with Argo, and his attorney was present during the execution of the Assignment Agreements.  There is no viable claim of fraud.

E.      New York State's "Structured Settlement Act" Does Not Apply

New York State's "Structured Settlement Protection Act," (the "Structured Settlement Act") applies to arrangements for "periodic payments of damages for personal injuries or sickness established by settlement or judgment in resolution of a tort claim." N.Y. Gen. Ob. L. §5-1701(l). The Structured Settlement Act requires, inter alia, compliance with particular disclosure obligations and requires judicial approval of any transfer.  See generally N.Y. Gen. Ob. L. §5-1702; 5-1705.

The Structured Settlement Act has no application here for the simple reason that the settlement that O'Brien entered into with Brookhaven was not a "structured settlement" as defined in that law.  Rather, the settlement stipulated only that O'Brien was to receive $1 million from Ambassador.  The fact that Ambassador was unable to pay a lump sum at once does not make the settlement a "structured settlement."  Therefore, the court grants Defendant's motion for summary judgment as to any claim arising out of New York's Structure Settlement Act.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety.

The Clerk of the Court is directed to enter judgment in favor of Defendant and to close

the file in this case.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
     August 23, 2010

14